Eulalie G. Calderone et al.
            vs.                     P.A.No.935
Peter J. Calderone, Ex'r.
          March 18, 1926

BLODGETT, J.  Appeal from a decree of the Municipal Court in Providence admitting to probate the will of Carlo Calderone, late of Providence, and heard upon motion for a new trial after verdict of a jury declaring said will not to be the will of deceased.

In its charge to the jury the Court submitted but one issue as raised by testimony submitted, viz: was such undue influence exerted upon Carlo Calderone at the time of the making of said will as to prevent him from disposing of his property as he desired.

The trial of the case occupied two weeks and a large number of witnesses testified, and as usual in cases of this nature the testimony wandered far afield from the issue. The record discloses the execution of at least two wills, one of October 8, 1924, the second and final one of November 17, 1924. Except as to certain details of the disposition of his property after the death of his wife, the wills are similar.

There was created a certain atmosphere by witnesses to the effect that the will of November 17, 1924, was unfair to the widow, who had aided her husband in acquiring the property, in that she had only a life estate in the same. In other words, that it was an unfair will, and that the executor named, and one of the beneficiaries of the remainder under the will, had profited greatly from his Uncle Carlo, during the lifetime of the said Carlo, and it was hinted in a roundabout way that much of Carlo's estate had been absorbed by said executor and his immediate family before said Carlo's death. Such testimony naturally would have the effect of prejudicing the jury against the executor and his father and brothers without any consideration on the part of the jury as to whether or not this was not exactly what the maker of the will desired.

The record discloses that on November 17, 1924, at the time the will was executed, Carlo Calderone was suffering from a cancer and was a very sick man.

It is claimed by appellants that morphine was administered to ease the pain and that the mind of testator was affected thereby, but there was no expert evidence offered as to the effects of morphine upon the brain, and there was testimony by a physician that the use of morphine in the amount testified to would not stupefy the testator.

An examination of the two wills discloses that in so far as the widow is concerned, she fared the same in both.

Testator evidently in both wills attempted to provide a life estate for the widow in the entire income, except a bequest of $5000. There is nothing in the record to show that at any time he intended to do anything else. Whether or not this was a fair disposition of his property is not the question. The real question is as to what he intended to do and whether

he carried out those intentions in such will.

Under similar clauses in each will creating a trust for the benefit of the widow very wide powers and discretions were lodged in the trustee, Peter J. Calderone.

Much testimony was offered, and appears on the record, the purpose of which was to show that said Peter J. Calderone had benefited from gifts during the lifetime of his Uncle Carlo, the deceased, and that his uncle sought his advice frequently in business transactions. There was testimony that he was frequently closeted with his uncle and that opportunity was thus offered for said Peter to influence his uncle in the disposition of his property.

The situation, as far as said Peter is concerned, does not appeal to the Court as unnatural. Peter J. Calderone was in the banking business, and, being a member of the City Council of Providence, more or less a figure in municipal affairs, it seems to the Court not unnatural that his uncle, an illiterate man, unable to read or write, save to write his name, should lean upon him in business matters.

The two wills were executed within two months of each other in 1924. The sole difference in the two is as to the disposition of the remainder of the estate after the death of his wife.

His wife was of French descent. Carlo was born an Italian in Italy. There is a hint in the testimony as to a jealous fear in the Calderone family that the estate, if controlled by the widow, would be lost to the Calderones.

The Court is strongly of the opinion that the evidence offered is not sufficient to satisfy the Court that the appellants have sustained the burden of proof resting upon them that Carlo Calderone, on the 17th day of November, 1924, did not know what he was doing when he executed the will in question, or that, in his weakened condition of body and mind, he was influenced to do something with his property which he did not intend to do.

There is, however, in litigation of this nature a practical question which faces the Court. The estate is not large and will be wasted by litigation. The Court is of the opinion that if a new trial were granted, owing to the atmosphere which surrounds a case of this nature, and if the issue were submitted to another jury, the result would be the same, and the expense of trial entirely out of proportion to the value of the estate. In the opinion of the Court the widow would be no better off if the will were set aside, and the costs of litigation would finally eat up the estate, and that it would be for the benefit of the widow and all concerned that the court of last resort should determine the question whether a verdict should or should not have been directed sustaining said will as the last will of the deceased.

Motion for new trial is therefore denied.

For Appellants: Anthony V. Pettine.

For Appellee: George A. Raymond and James J. McGovern.